# UNITED STATES DISTRICT COURT
## MIDDLE District of FLORIDA

EUGENIA CLARK,
as Personal Representative
of the Estate of Erik Dorian Clark

    Plaintiffs,                    Case No: 2:05-CV-508-FTM-33 DNF

vs.

PRISON HEALTH SERVICES, INC.;
SHERIFF MIKE SCOTT, AS SHERIFF OF
LEE COUNTY, FLORIDA;
ANDREW PAUL SAFRON, M.D., and
MARVIN NICHOLAS, D.O.

    Defendants.
_____/

## PLAINTIFFS' AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, EUGENIA CLARK, as Personal Representative of the Estate of Erik Dorian Clark, Deceased, by and through undersigned counsel, herein sue Defendants, THE HONORABLE SHERIFF MIKE SCOTT, AS SHERIFF OF LEE COUNTY, FLORIDA [hereinafter referred to as "SCOTT"]; PRISON HEALTH SERVICES, INC. [hereinafter referred to as "PHS"]; ANDREW PAUL SAFRON, M.D., MARVIN NICHOLAS, D.O., and allege:

### Jurisdiction and Venue

1. This is an action of deprivation and violation of civil rights guaranteed by the United States Constitution. The amount in controversy is in excess of fifteen thousand dollars ($15,000.00), exclusive of interests, costs and attorneys' fees.

2. Venue and jurisdiction are proper in this Court because all of the wrongful acts complained of occurred within this judicial district (Lee County).

3. EUGENIA CLARK was appointed Personal Representative of the Estate of Erik Dorian Clark by Letters of Administration in the Circuit Court for Hillsborough County, Florida, Probate Division, on March 31, 2005. The Estate is a beneficiary under Florida's Wrongful Death Act and is entitled to recover damages under 42 U.S.C. §1983.

4. EUGENIA CLARK and WILLIAM EDWIN CLARK are the natural parents of Erik Dorian Clark (hereinafter "Erik Clark") and are entitled to maintain a cause of action for the permanent loss of their familial relationship with him, and for their pain and suffering under 42 U.S.C. §1983. They are also Clark's "survivors" under Florida's Wrongful Death Act, and are therefore beneficiaries under the Act.

5. At all times material hereto, Defendant MIKE SCOTT ("SCOTT") was the duly elected Sheriff of Lee County Florida, a constitutional officer, and was responsible for the conduct of the employees and agents of the Lee County Corrections Division. Defendant, SCOTT, operated the Lee County Detention Center, and was responsible for establishing customs, policies, and procedures to regulate the conduct of agents and employees of the Lee County Corrections Division and for ensuring that the employees and agents of Lee County Corrections Division obeyed the laws of the State of Florida and the United States.

6. Defendant MARVIN NICHOLAS ("DR. NICHOLAS") was, at all times material hereto, charged with custodial medical evaluation and treatment of Clark until his death and at all times material was acting under the color of Florida law and was a willing participant in joint activity with the State of Florida and its agents.

7. Defendant ANDREW PAUL SAFRON ("DR. SAFRON") was at all times material hereto, charged with custodial medical evaluation and treatment of Clark until his death and at all times material was acting under the color of Florida law and was a willing participant in joint activity with the State of Florida and its agents.

8. Defendant PRISON HEALTH SERVICES ("PHS") is a Tennessee Corporation authorized to do business in the State of Florida and employed Defendants, SAFRON, and NICHOLAS at the time Defendants participated in the deliberate indifference to the serious medical needs of Erik Clark complained of herein below resulting in the unnecessary and wanton infliction of pain and suffering upon Erik Clark and his lingering death between August 7, 2003 and September 16, 2003 and PHS is therefore vicariously liable those claims set forth herein below.

9. All conditions precedent to the filing of this action have either been performed or waived. As to the state claims, notice of claim was served in compliance with section 768.28 Florida Statutes and 180 days have passed and the claim has not been honored and all other conditions precedent have been fulfilled or are waived.

### General Allegations

10. Prior to the date of the death of Erik Clark on September 16, 2003, Erik Clark had been a patient at Lee Mental Health Center, Inc., d/b/a Ruth Cooper Center for Behavioral Health Care ("Ruth Cooper"] on numerous occasions, beginning in October of 2000. Erik Clark had been diagnosed and treated for chronic mental illness at Ruth Cooper since 1983. This history of chronic, severe mental illness was well known to those healthcare providers treating Erik Clark at Ruth Cooper and the Jail.

3

11. On August 7, 2003, at 2029 hours, Erik Clark was booked at the Lee County Jail (the "Jail") after being arrested for an assault on a mental health worker at Ruth Cooper.

12. While in custody at the Jail, Erik Clark was medically screened at 2020 hours. Notwithstanding his known history of severe mental illness and his exhibiting symptoms of serious mental illness, and further notwithstanding the Jail's receipt from Ruth Cooper of a list of medications necessary for Erik Clark's health, Erik Clark was left with no medications to abate the symptoms of his serious psychotic disorder for approximately four days..

13. Further, notwithstanding that Erik Clark's medications list included Cholorpromazine, Eskalith, Geodon, Atenolol and Seroquel, DR. SAFRON ordered only Prozac and Lithium.

14. Lithium is one of the older types of anti-psychotic medications that is notable for a high risk of overdosing. At all times relevant, it was well known to Defendants that persons receiving treatment with Lithium must be closely monitored through blood testing because Lithium can accumulate to toxic levels in the body and cause death.

15. Neither DR. SAFRON nor anyone else ordered an initial lithium blood level, nor was a Lithium blood level ever obtained.

16. The records show that, without his usual course of medications, Erik Clark was self-inflicting wounds, hyperventilating, and hitting his head on the ceiling at the Jail. A Suicide Precaution Protocol was initiated for "close observation logging for every shift."

17. Approximately one week after admission at the Jail, Erik Clark appeared at the clinic for a physical examination. Clinic staff reported that Erik Clark was "unable to be

assessed." MARVIN NICHOLAS, M.D. "deferred" examining Erik Clark but nevertheless prescribed Atenolol, Lipitor, Geodon and Lasix (diuretic), even though Lasix is contraindicated in patients on Lithium therapy.

18. Having been deprived of his usual anti-psychotic medications, Erik Clark's behavior became more erratic, and on August 17th he was reported by the social worker as confused, standing nude at his cell bars and responding to internal stimuli, while talking to the wall and floor.

19. On August 18th, DR. SAFRON saw Erik Clark for follow up and noted that he was exhibiting symptoms of psychosis. Nevertheless, DR. SAFRON ordered that Erik Clark continue on Lithium and Prozac for one more week. Still, no Lithium level was ordered.

20. Thereafter, Clark began the predictable decline associated with Lithium toxicity: he was reported to be mumbling standing by the cell bars, unresponsive to any questions; Erik Clark had a seizure in his cell, after which he was found uncommunicative and lying on the floor. No lithium level was ordered. He remained uncommunicative, lying on the floor of his cell or on his knees.

21. Between August 23rd and August 27th, it was noted that Erik Clark was pacing, hitting the walls, repeatedly flushing the toilet and running water. He was shouting, staring blankly, and banging his head on the wall.

22. Instead of prescribing the anti-psychotic medications that he needed, the Jail staff pepper-spayed Clark on August 25th; however, he was not provided Chlorpromazine for his symptoms, and his Lithium level remained unknown.

23. On August 25th DR. SAFRON saw Erik Clark and noted that "most of the time Clark is mumbling to himself." DR. SAFRON ordered that Erik Clark's blood be tested for lithium carbonate level 12 hours after his last dose of Lithium. The order was ignored by PHS staff.

24. On August 27th, the records show that Erik Clark's right knee was red and swollen and had developed three pustules. Antibiotic therapy was prescribed. On August 29th, Erik Clark's knee was open and swollen and became progressively worse, until September 12th, when the lesions on his knee were draining a purulent discharge, and his leg and ankle were swollen and tender.

25. Despite Erik Clark's psychiatric history and medication schedule, he was not prescribed Chlorpromazine until August 29th. DR. SAFRON continued to order Lithium without a blood level.

26. By September 6th, Erik Clark was exhibiting clear signs and symptoms of advanced Lithium toxicity: Clark's blood pressure was 83/50, his pulse was 104 and he was falling in his cell. Erik Clark was fatigued, losing weight, confused and was losing muscular strength.

27. On September 8th, Erik Clark's Medical Chart had disappeared. His blood pressure measured only 92/50. Nevertheless, DR. SAFRON saw Erik Clark and continued treating him with Lithium without a blood level.

28. DR. NICHOLAS saw Erik Clark but did nothing to investigate the precipitous drop of his blood pressure and otherwise failed to properly monitor Erik Clark's medication, condition and care.

29. On September 12th, Erik Clark was found in his cell with more hallmark symptoms of lithium toxicity (vomiting with diarrhea, a blank look on his face and unable to communicate). Nothing was done until the next day, when Erik Clark was found "lying on bunk bleeding from mouth. Urine and loose stool noted on floor." He was not responding to verbal stimuli and the nurse was unable to get a blood pressure. When the nurse forced Erik Clark's eye lids open, his eyes rolled back in head. The nurse called 911.

30. After transport to Lee Memorial Hospital Emergency Room, Erik Clark's blood Lithium level was measured at a toxic 3.3. Erik Clark was suffering from pulmonary edema, hypoxemia, renal insufficiency and seizures, all caused by Lithium toxicity. His knee was "markedly swollen, erythematous and warm to the touch."

31. Erik Clark was pronounced dead on September 16, 2003 at Lee Memorial Hospital. The cause of death was complications related to Lithium toxicity.

32. While incarcerated at the Jail, Erik Clark was over- or inappropriately-medicated with Lithium to an extent that caused his death. Erik Clark was permitted to progress into a state of profound physical and mental distress without adequate treatment or monitoring. The refusal of PHS, its employees and agents, to monitor and attend to his health amounted to deliberate indifference to his serious medical needs.

33. Defendant SCOTT had notice (even before Clark's confinement), that PHS was consistently failing to provide adequate professional medical services to inmates, including failing to provide the necessary and adequate care and management of inmates on prescribed medications.

**COUNT I**

## VIOLATION OF CONSTITUTIONAL RIGHTS
## ALL DEFENDANTS

34. Plaintiffs re-allege and incorporate by reference the General Allegations set forth above as though fully set forth herein.

35. This is an action for violation of the Fourth Amendment of the U.S. Constitution against all Defendants.

36. Defendants, while acting under color of State law, failed to enact or promulgate sufficient polices or procedures to ensure against the deliberate indifference to Eric Clark's serious medical needs, knowing that a failure to do so could result in serious medical consequences, including death.

37. Alternatively, Defendants, while acting under color of State law, employed a custom of violating its own polices and procedures which resulted in deliberate indifference to Erik Clark, and his serious medical needs in custody.

38. Defendants, DR. SAFRON, DR. NICHOLAS and PHS had actual notice of decedent's medical condition and history while he was confined at the Lee County Jail. Defendant PHS had notice of general inadequate custodial medical care and failed to implement policies to protect inmates with serious medical conditions. Notwithstanding such knowledge, Defendants were deliberately indifferent to decedent's serious medical needs which ultimately resulted in his death.

39. Decedent Erik Clark's death was a reasonably foreseeable consequence of the custom of failing to implement adequate polices and procedures and/or ignoring existing policies and procedures resulting in Eric Clark's death while confined at the Lee County Jail.

40. Defendants, through their actions described above, caused decedent Erik Clark to be subjected to the deprivation of rights, privileges and immunities secured by the Constitution of the United States, including:

   a. The right not to be subjected to cruel, unusual, and excessive punishment as guaranteed to prisoners by the Fourth Amendment.

   b. The right to have serious medical needs addressed in a timely manner as guaranteed to prisoners by the Fourth Amendment.

   c. The right to be secure in his person and the right to privacy as protected by the Fourth and Fourteenth Amendments;

   d. The rights to liberty protected by the Fourteenth Amendment;

   e. The right to substantive and procedural due process protected by the Fourteenth Amendment; and

   f. Violating State-created rights enforceable under the Fourteenth Amendment by violating the rules and regulations of the State of Florida, including but not limited to, Chapter 951 (County and Municipal Prisoners), Fla. Stat. (2001) and those fundamental rights to due process, liberty, and life as guaranteed by the Constitution of the United States.

41. Defendants were deliberately indifferent and recklessly disregarded Decedent, Erik Clark's medical care by:

42. Failing to ensure that decedent was properly prescribed medications to treat a diagnosed mental illness;

43. Failing to ensure that decedent was properly administered the medications prescribed to treat a diagnosed mental illness;

44. Failing to ensure that decedent's medicines were properly regulated during the period of his incarceration;

45. Failing to ensure that decedent was placed in a proper clinical setting which would ensure reasonably acceptable monitoring of his mental health status as well as blood monitoring;

46. Failing to order decedent's transfer to a facility reasonably equipped to provide adequate medical care to decedent;

47. Failing to confer and consult with other Jail medical personnel to determine the extent of decedent's physical condition and his mental health status and the effects the prescribed medications had on him;

48. Failing to properly assess decedent's deteriorating physical and mental condition;

49. Failing to follow up on decedent's condition to ensure that decedent would not progress into symptoms which ultimately resulted in his death;

50. Failing to recognize and/or ignoring decedent's symptoms of Lithium toxicity and instead pepper-spraying decedent when he exhibited those symptoms, thereby ensuring decedent's painful, humiliating and unnecessary death.

51. As a direct, proximate and foreseeable result of the Constitutional violations set forth above, decedent suffered severe physical and emotional injuries and mental and physical pain and suffering, which ultimately resulted in his death and loss of enjoyment of life. Decedent's survivors, including his parents, have lost his love and companionship, instruction, and guidance and have incurred great mental pain and suffering, which losses will continue in the future. Erik Clark's estate has lost the net

accumulations and value of his earnings and earning capacity, and his survivors and/or Estate has incurred funeral expenses and legal expenses.

52. Defendants recklessly deviated from reasonably acceptable standards of care in failing to properly diagnose, treat and care for Erik Clark.

53. At all times material hereto, Defendants knew, or would have known had they not been deliberately indifferent to his medical treatment and assessment, that failure to provide adequate medical care would result in a substantial risk to Erik Clark's life.

54. The medical services provided to Erik Clark were so grossly substandard, incompetent and/or inadequate as to fairly be characterized as medical care so cursory as to amount to no medical care at all.

55. At all material times hereto, the Defendants were acting in conformity with, or as a direct result of, the established policies, practices, procedures and customs of Defendants, SCOTT and PHS, for the provision of health care to inmates at the Jail.

56. Defendants' failures, as alleged above, are all attributable to the deliberately indifferent policies, practices, procedures, and customs of the Defendants.

57. On information and belief, the policy, practice, procedure and custom in effect at the Jail at all times material to this action, was to delay medical treatment to inmates.

58. Permitting life-threatening conditions to go undetected for non-medical reasons is a pervasive practice, which is deliberately indifferent to the serious medical needs of prisoners.

59. Defendants, SCOTT and PHS are responsible for the policies, practices, procedures and customs which govern the provision of medical care in the Jail.

60. Those who make polices, practices, procedures and customs for the Defendants were on notice long before Erik Clark was incarcerated of the deficiencies in the provision of medical care, as alleged above.

61. Defendants in their acts and omissions evinced 1) subjective knowledge of a risk of serious harm; 2) disregard of that risk; 3) conduct that is more than mere negligence. Such acts and omissions constitute deliberate indifference.

62. Defendants' deliberate indifference directly, proximately, and jointly and severally caused Plaintiffs damages as alleged above. As the prevailing party in this action, Plaintiff shall be entitled to attorneys' fees pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Plaintiffs pray that this Court:

a. Declare that each of the Defendants, individually and collectively, engaged in conduct which subjected Plaintiff's decedent to the deprivation of his constitutional rights;

b. Award to the Plaintiffs compensatory damages for the deprivation of decedent's constitutional rights, including hedonic damages, punitive damages, attorneys fees pursuant to 42 U.S.C. Section 1988, costs, including damages for past and future lost companionship, past and future mental pain and suffering of decedent and decedent's survivors, medical and funeral expenses, loss of net accumulation by the Estate and any other damages recoverable under Florida law;

c. Award to the Estate and survivors punitive damages against individual defendants, SAFRON, and NICHOLAS;

d. Grant Plaintiffs a trial by jury on all issues so triable; and

e. Grant such other and further relief as law and equity allows, including costs and reasonable attorneys' fees pursuant to 42 U.S.C. Section 1988.

## COUNT II

### VIOLATION OF CIVIL RIGHTS - 42 U.S.C.§1983
### ALL DEFENDANTS

63. Plaintiffs reallege and incorporate the General Allegations above, as though fully set forth herein.

64. This is an action for violation of Constitutional rights under 42 U.S.C. Section 1983 against Defendants,

65. Plaintiffs are entitled to recover compensation from Defendants for violation of constitutional rights under the fourteenth amendment, on behalf of Erik Clark's survivors.

66. Their liberty interest and rights in the continued society, association, relationship and companionship with their son, the decedent; and

67. Their liberty interest in an expectation of certain minimal standards for the treatment of their son with respond to safety, health and well-being.

68. As a further direct and proximate cause of the conduct alleged herein, Plaintiffs lost the benefit of the decedent's services, financial support, companionship, and society.

WHEREFORE, Plaintiffs pray that this Court:

a. Declare that each of the defendants, individually and collectively, engaged in conduct which subjected Plaintiffs' decedent to the deprivation of his constitutional rights;

b. Award to the Plaintiffs compensatory damages for the deprivation of decedent's constitutional rights, including hedonic damages, punitive damages, attorneys fees pursuant to 42 U.S.C. section 1988, costs, including damages for past and future lost

companionship, past and future mental pain and suffering of decedent and decedent's survivors, medical and funeral expenses, loss of net accumulation by the Estate and any other damages recoverable under Florida law;

c. Award to the Estate and survivors punitive damages against individual defendants, SAFRON, and NICHOLAS;

d. Grant Plaintiffs a trial by jury on all issues so triable; and

e. Grant such other and further relief as law and equity allows, including costs and reasonable attorneys' fees pursuant to 42 U.S.C. Section 1988.

### COUNT III

### INTENTIONAL MISCONDUCT

69. Plaintiffs re-allege and incorporate by reference the allegations in the General Allegations above as though fully set forth herein.

70. Plaintiffs bring this action as Personal representative pursuant to and authorized by the Florida Wrongful Death Act, Section 768.16 et seq., Florida Statutes, on behalf of and for the benefit of decedent's next of kin and on behalf of decedent's survivors, Edwin and Eugenia Clark.

71. Plaintiffs are entitled to recover compensation from Defendant SCOTT for the acts and omissions of the individual Defendants and the policies, practices, and customs as alleged in the General Allegations and in Counts I and II of this Complaint, which were carried out in such a fashion as to demonstrate deliberate indifference to the decedent's right to be free from unnecessary and unlawful bodily harm or the threat thereof.

72. Defendants failed to adequately train, supervise, discipline their agents and employees in the exercise of their duties and functions and in their failure to enforce the laws of the State of Florida, and the rules and regulations of the Lee County Jail, and said conduct exhibits a lack of that degree of due care which prudent and reasonable individuals would show in executing the duties of jail supervisory personnel.

73. Upon incarcerating the decedent, the defendants, individually and collectively, had a duty to the decedent to keep him safely and to provide the medical care necessary for his physical well-being.

74. Defendant, SCOTT, his agents and employees acting in the course and scope of their employment, although having knowledge that the decedent was in pain and progressively becoming weaker, breached their duties owed to the decedent in one or more of the following ways.

    a. Failing to take seriously decedent's symptoms of Lithium toxicity, including but not limited to decedent's symptoms of seizures, confusion, incoherence, unsteadiness, and hallucinations;

    b. Failing to adequately examine or perform tests on decedent either because such tests were absolutely indicated under the prevailing standard of care or because such tests were indicated in response to decedent's symptoms;

75. Treating decedent cruelly, denying him care, pepper spraying him instead of providing him the medications known to be needed, refusing to help him and ignoring him as he lay dying in his cell;

76. Failing to act promptly, properly and effectively in rendering adequate and proper emergency care and treatment;

77. Failing to properly hire, train and supervise those members of PHS and Lee County Jail who were involved in the incarceration and care of the deceased;

78. Failing to follow normal and accepted corrections practices and procedures relating to the safe care of inmates.

79. As a direct and proximate cause of the unlawful acts of Defendant, SCOTT, his agents and employees, the decedent sustained injuries that caused him pain, suffering, and death, and the next of kin of the decedent have sustained substantial pecuniary loss and damage.

80. The acts, omissions, and conduct of defendant SCOTT and his agents and employees was undertaken with deliberate indifference to the consequences said conduct would have upon the decedent.

WHEREFORE, Plaintiffs pray to this Court for:

   a. Award to Plaintiffs compensatory damages;

   b. Grant such other relief as law and equity allows, including costs; and

   c. Grant Plaintiffs a trial by jury.

## COUNT IV

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

81. Plaintiffs re-allege and incorporates by reference the allegations in the General Allegations, above, as though fully set forth herein.

82. Plaintiffs are entitled to recover compensation from defendants SCOTT for negligent acts and omissions of the individual defendants, agents and employees, acting in the course and scope of their employment, and the policies, practices, and customs as alleged in the General Allegations and in Counts I and II of this Complaint.

83. Defendant SCOTT owed Plaintiffs' decedent a duty of care but negligently failed to adequately train, supervise, discipline their agents and employees in the exercise of their duties and functions and in their failure to enforce the laws of the State of Florida, decent, reasonable, and accepted standards of custodial care, and the rules and regulations of the Lee County Detention Center.

84. Defendant SCOTT, their agents and employees acting in the course and scope of their employment, although having knowledge that the decedent was in pain and progressively becoming more disoriented and weak, breached their duties owed to the decedent in on or more of the following ways:

   a. Failing to take seriously decedent's symptoms of Lithium toxicity, including but not limited to decedent's symptoms of seizures, confusion, incoherence, unsteadiness, and hallucinations;

   b. Failing to adequately examine or perform tests on decedent in response to his apparent over-medication and the dangerous nature of the medication prescribed;

   c. Treating decedent cruelly, denying him care; pepper spraying decedent instead of properly medicating him;

   d. Failing to act promptly, properly and effectively in rendering adequate and proper emergency care and treatment to the decedent and to timely summon medical intervention;

   e. Failing to properly hire, train and supervise those members of Prison Health Services and the Lee County Detention Center who were involved in the incarceration and care of the deceased;

   f. Failing to follow normal and accepted corrections practices and procedures

relating to the safe care of inmates.

85. These actions were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community and constitute a case in which the recitation of the facts to an average member of the community would arouse his resentment against the actors, and lead him to exclaim, "Outrageous!"

86. As a direct and proximate result of the unlawful and negligent acts of defendants SCOTT, the decedent sustained injuries that caused him emotional distress.

WHEREFORE, plaintiffs pray this Court:

    a. Award to Plaintiff compensatory damages

    b. Grant such other relief as law and equity allows, including costs; and

    c. Grant plaintiff a trial by jury.

## DEMAND FOR JURY TRIAL

87. Plaintiff demands a trial by jury on all issues so triable.

_____
C. Steven Yerrid, Esq.
Florida Bar No.: 207594
Theresa L. Fiset, Esquire
Florida Bar No.: 0149098
THE YERRID LAW FIRM
101 E. Kennedy Boulevard, Suite 3910
Tampa, Florida 33602
Telephone: (813) 222-8222
Facsimile: (813) 222-8224
*Counsel for Plaintiffs*